FILED
2010 Oct-29  PM 04:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **ANGELA ROBINSON** | ) |
| **o/b/o E.L.R.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **Case No.: 2:09-CV-1862-VEH** |
| **v.** | ) |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner,** | ) |
| **Social Security Administration,** | ) |
| | ) |
| **Defendant.** | |

## **MEMORANDUM OPINION**

This action was originally filed by Angela Robinson ("Ms. Robinson") on behalf of her minor daughter, E.L.R.,[1] pursuant to Title XVI of the Social Security Act. E.L.R. seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), which denied her application for childhood Supplemental Security Income ("SSI") benefits.[2] The case is ripe for

---

[1] For purposes of this opinion, the plaintiff will be referred to as "E.L.R." rather than her mother, Ms. Robinson, because the legal standards apply to her and her impairments. *See Stanton v. Astrue*, 482 F. Supp. 2d 1318, 1320 (N.D. Ala. 2007).

[2] In general, the legal standards applied are the same regardless of whether a claimant seeks SSI or Disability Insurance Benefits ("DIB"). However, separate, parallel statutes and regulations exist for SSI and DIB claims. Therefore, citations

review pursuant to 42 U.S.C. § 405(g), of the Social Security Act.[3]  For the reasons set out below, the court concludes that the Commissioner's decision is due affirmed.

## STANDARD OF REVIEW

The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  *Richardson v. Perales,* 402 U.S. 389, 390, 41, 91 S. Ct. 1420, 1421, 1432, 28 L. Ed. 2d 842 (1971); *McRoberts v. Bowen,* 841 F.2d 1077, 1080 (11th Cir. 1988); *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1983); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239.  This court will determine that the administrative law judge's ("ALJ") opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*.  Substantial evidence is "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d at 1239.

---

in this opinion should be considered to refer to the appropriate parallel provision as context dictates.  The same applies to citations of statutes or regulations found in quoted court decisions.

  [3] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish her entitlement for a period of disability, an individual under age 18 must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4]  The law defines children's "disability" as "a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period or not less than 12 months." 20 C.F.R. § 416.906; 42 U.S.C. § 1382c(a)(3)(C)(I).

In determining whether a child (*i.e.*, an individual under age 18) is disabled, the Regulations provide a three-step sequential process. 20 C.F.R. § 416.924(a).

> First, the ALJ must determine whether the child is engaged in substantial gainful activity. *Wilson*, 179 F.3d at 1277 n.1. If yes, the child is not disabled, but if no, the ALJ determines whether the claimant has a severe impairment. *Id.* If not, the child is not disabled. *Id.* If yes, the ALJ then considers whether the child has an impairment that meets, medically equals, or functionally equals the Listings of Impairments. *Id.* If the child satisfies a Listing, the child is conclusively disabled.

20 C.F.R. § 416.924(a); *see also Henry v. Barnhart,* 156 Fed. Appx. 171, 173 (11th Cir. 2005) (citing 20 C.F.R. § 416.924(a); *Wilson v. Apfel*, 179 F.3d 1276, 1277 n.1

---

[4] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499 as current through September 2, 2010.

(11th Cir. 1999)).

A medically determinable impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.908. It must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not merely by a claimant's statement of symptoms. *Id*.

Functional equivalence is found if the child's impairment - or combination of impairments - "result in '<u>marked</u>' limitations in two domains of functioning <u>or</u> an '<u>extreme</u>' limitation in one domain[.]" 20 C.F.R. § 416.926a (emphasis added). "A 'marked' limitation is defined as a limitation that 'interferes seriously with [the] ability to independently initiate, sustain, or complete activities,' and is 'more than moderate.'" *Henry*, 156 Fed. Appx. at 174 (citing 20 C.F.R. § 416.926a(e)(2)(I)). "An 'extreme' limitation is reserved for the 'worst limitations' and is defined as a limitation that 'interferes very seriously with [the] ability to independently initiate, sustain, or complete activities,' but 'does not necessarily mean a total lack or loss of ability to function.'" *Henry*, 156 Fed. Appx. at 174 (citing 20 C.F.R. § 416.926a(e)(3)(I)).

In order to determine whether a minor claimant's status functionally equals the criteria for an impairment that is listed in the Regulations, the ALJ must consider

"activities in terms of six domains." 20 C.F.R. § 416.926a(b)(1). These domains are:

     (i)     Acquiring and using information;

     (ii)     Attending and completing tasks;

     (iii)     Interacting and relating with others;

     (iv)     Moving about and manipulating objects;

     (v)     Caring for yourself; and,

     (vi)     Health and physical well-being.

20 C.F.R. § 416.926(a)(b)(1)(i)-(vi). If the impairment(s) does not satisfy the duration requirements, or does not meet, medically equal, or functionally equal one of the listings in the Regulations, a finding of not disabled will be reached and the claim will be denied. *See* 20 C.F.R. § 416.924(d)(2).

## **FACTUAL AND PROCEDURAL HISTORY**

E.L.R. was seven years old when her mother filed her disability application and eight years old at the time the ALJ issued his decision. (Tr. 52, 196). During her administrative hearing, E.L.R. testified that she was in second grade. (Tr. 190).

E.L.R.'s mother filed an application for childhood SSI on August 30, 2004. (Tr. 52-56). In this application, Ms. Robinson claims that E.L.R. became disabled on June 1, 2000, due to attention deficit hyperactivity disorder, learning disability, and a history of asthma. (Tr. 32, 52). The claim was initially denied by the

Commissioner on November 8, 2004. (Tr. 33-35).

E.L.R. filed a timely request for a hearing before the ALJ on November 17, 2004. (Tr. 39). After conducting the requested hearing on December 7, 2005 (Tr. 189), the ALJ concluded, on March 15, 2006, that E.L.R. was not disabled and denied her application for benefits. (Tr. 19-30). On May 3, 2006, E.L.R. filed a request for review of the ALJ's decision. (Tr. 14). The Appeals Council subsequently denied E.L.R.'s request on July 21, 2009. (Tr. 5).

E.L.R. filed a complaint with this court on September 18, 2009. (Doc. 1). The court has carefully considered the record and affirms the decision of the ALJ.

## **FINDINGS OF THE ADMINISTRATIVE LAW JUDGE**

Under step one of the three-part test for disability in children, the ALJ found that E.L.R. had not engaged in substantial gainful activity. (Tr. 22). Under step two, the ALJ found that E.L.R. had two severe impairments, namely attention deficit hyperactivity disorder and a learning disorder. *Id.*

The ALJ then concluded that E.L.R. did not have an impairment that meets or medically equals one of the listed impairments. *Id.* Additionally, the ALJ stated that E.L.R. did not have an "impairment or combination of impairments that functionally equals the listings." *Id.* Based on these findings, the ALJ concluded that E.L.R. had not been disabled since the date on which her application was filed. (Tr. 30).

## **ANALYSIS**

This court is limited in its review of the Commissioner's decision in that the Commissioner's findings of fact must be reviewed with deference. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Graham v. Bowen*, 790 F.2d 1572, 1574-75 (11th Cir. 1986)). In contrast to factual findings, however, the Commissioner's conclusions of law are subject to an "exacting examination" or *de novo* review. *See Martin*, 894 F.2d at 1529 (citing *Graham*, 790 F.2d at 1574-75); *Martin*, 894 F.2d at 1529 ("The Secretary's failure to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal.") (citations omitted). In particular, this court has a "responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *See Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (emphasis added) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[5]

E.L.R. challenges the Commissioner's final decision on the grounds that the ALJ erred in rejecting E.L.R.'s the opinion of her treating physician, Dr. Elrefai. (Doc 10 at 1). More specifically, E.L.R. asserts that Dr. Elrefai's opinion should have

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

been afforded greater weight by the ALJ. *Id.* at 7. In its review, this court finds that the ALJ's decision is due to be affirmed.

I.  **SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S DECISION TO AFFORD LITTLE WEIGHT TO THE CLAIMANT'S TREATING PHYSICIAN**

E.L.R. states that "[t]he opinions of treating physicians are entitled to substantial weight and controlling weight in the absence of good cause" and that the ALJ should have given greater weight to the opinion of her treating physician, Dr. Elrefai. *Id.* at 4, 7.

The Eleventh Circuit Court of Appeals has held that substantial weight must be given to the opinion of the treating physician in determining disability. *Lewis v. Callahan*, 125 F. 3d 1436, 1440 (11th Cir. 1997). The Eleventh Circuit has also explained that a physician's opinion may not be dismissed without good cause. *Id.* The court in *Lewis* further clarified that good cause exists when the treating physician's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.*

Moreover, "the ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Id.* However, when the ALJ articulates specific reasons for failing to give the opinion of

a treating physician controlling weight, and those reasons are supported by substantial evidence, this court will not re-weigh the evidence anew. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th. Cir. 2005)("Where our limited review precludes re-weighing the evidence anew, and as the ALJ articulated specific reasons for failing to give [the treating physician's] opinion controlling weight, we find no reversible error.") (internal citation omitted).

In this case, the ALJ had good cause to give less weight to Dr. Elrefai's opinion because his opinion was "conclusory [and] inconsistent with [his] own medical records," other evidence "supported a contrary finding," and the ALJ articulated specific reasons for failing to give Dr. Elrefai's opinion controlling weight. *Id.*

First, the ALJ discredited Dr. Elrefai's opinion because it was a pre-printed form in which Dr. Elrefai "stat[ed] through checked boxes that the claimant has a marked degree of limitation in attending and completing tasks, interacting and relating to others, inattention, impulsiveness, and hyperactivity". (Tr. 24, 185-86).

Then, the ALJ proceeded to show how Dr. Elrefai's own notes contradicted his findings on the pre-printed form. (Tr. 24). For instance, on October 4, 2004, Dr. Elrefai wrote that E.L.R.'s "attitude and school grades are improving. Plays better with other kids without pushing and fighting." (Tr. 177). His December 2, 2004, notes report that E.L.R. is "doing better. Focuses on her work. Getting good grades."

*Id.* On February 3, 2005, Dr. Elrefai stated that E.L.R. was "doing well . . . [d]oing good in the new school . . . calm and appropriate today." (Tr. 176). Dr. Elrefai's April 5, 2005, notes indicated that E.L.R.'s "behavior is better on the medicine. Sleep and appetite are good." *Id.* Finally, Dr. Elrefai noted on June 5, 2005, that E.L.R. was "doing well." (Tr. 175).

### A. Attending and completing tasks

Additionally, other evidence from the record supports a contrary finding to Dr. Elrefai's opinions. First, Dr. Elrefai says that E.L.R. has a marked limitation in attending and completing tasks. (Tr. 186). In the area of attending and completing tasks, the regulations provide that:

> When [a child is] of school age, [the child] should be able to focus [her] attention in a variety of situations in order to follow directions, remember and organize [her] school materials, and complete classroom and homework assignments. [The child] should be able to concentrate on details and not make careless mistakes in [her] work (beyond what would be expected in other children of the same age who do not have impairments). [The child] should be able to change [her] activities or routines without distracting [herself] or others, and stay on task and in place when appropriate. [The child] should be able to sustain [her] attention well enough to participate in group sports, read by [herself], and complete family chores. [The child] should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

20 C.F.R. 416.926a(h)(2)(iv). Here, there is overwhelming evidence to support a contrary finding that E.L.R. does not have a marked limitation in attending and

completing tasks.

For example, E.L.R.'s teacher, Ms. Dominguez, noted on her teacher questionnaire that E.L.R. does not need "extra help in this area." (Tr. 64). Moreover, Ms. Dominguez found that E.L.R. had no problem at all carrying out single and multi-step instructions, completing homework and class assignments, and working without distracting others. *Id.* The only thing E.L.R. had a slight problem with was completing work accurately without careless mistakes. *Id.* Additionally, Ms. Dominguez noted that E.L.R.'s grades are close to 100's and that is with "very elevated concepts." (Tr. 70). Furthermore, she stated that E.L.R.'s "needs are so mild that she receives minimal time in the Resource Room." *Id.*

Another of E.L.R.'s teachers, Ms. Sizemore, stated that there is no evidence of any limitation in the area of attending and completing tasks. (Tr. 135). Ms. Sizemore also noted that E.L.R. was doing a "good job" on E.L.R.'s skill report for the 2004-2005 academic year. (Tr. 139). Additionally, while E.L.R. did experience difficulty in "producing large amounts of written work in a timely manner," when the work amounts were reduced and E.L.R. was given extended time to complete the assignment, she has been successful. (Tr. 155).

After E.L.R. transferred to the Birmingham City Schools system, it was noted that, "[s]he has adjusted to the new school and resource setting very well. [E.L.R.] is

cooperative and tries hard to do her work." (Tr. 96). Furthermore, it was reported that E.L.R. "participates in the general education curriculum the majority of the school day." (Tr. 101). On E.L.R.'s report card dated October 24, 2005, the teacher observed that E.L.R. is improving from being inconsistent with her homework. (Tr. 110).

Finally, Dr. Whitworth, the non-examining state agency psychologist, found that E.L.R. had less than a marked limitation in the area of attending and completing tasks at school. (Tr. 122).

### B.   Interacting and relating to others

Second, Dr. Elrefai states that E.L.R. has a marked limitation in the area of interacting and relating to others. (Tr. 186). In the area of interacting and relating to others, the regulations provide:

> [A school-aged child] should be able to develop more lasting friendships with children who are [the] same age. [The child] should begin to understand how to work in groups to create projects and solve problems. [The child] should have an increasing ability to understand another's point of view and to tolerate differences. [The child] should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand.

20 C.F.R. 416.926a(i)(2)(iv). Once again, Dr. Elrefai's finding of E.L.R.'s marked limitation in this area lacks evidentiary support in the record.

For example, E.L.R.'s teacher, Ms. Dominguez, stated that E.L.R. "seems

normal in these areas" and that she has not observed any problems with E.L.R. in this domain. (Tr. 65). She also reported that E.L.R. only had slight problems in expressing anger appropriately, respecting and obeying adults in authority, and following various rules. *Id.* Furthermore, Ms. Dominguez noted that it has not been necessary for her to implement behavior modification strategies for E.L.R and that she can understand almost all of E.L.R.'s speech. (Tr. 65-66).

In the Disability Determination Service Function Report, taken by a Disability Specialist over the phone with Ms. Robinson, Ms. Robinson stated that her daughter has friends her own age, can make new friends, generally gets along with adults, and generally gets along with her teachers. (Tr. 76). However, Ms. Robinson did note that her daughter cannot play team sports due to the impairment's effect on E.L.R.'s behavior. *Id.*

Dr. Whitworth concluded, after reviewing the record, that E.L.R. did not have a limitation in the area of interacting and relating with others. (Tr. 122). Additionally, Ms. Sizemore, another one of E.L.R.'s teachers, found no evidence that E.L.R. has a limitation in her ability to interact and relate to others. (Tr. 135). Ms. Sizemore also noted on E.L.R.'s report card that E.L.R. sometimes demonstrates respect for others. (Tr. 138). Finally, E.L.R. testified at the hearing before the ALJ that she has a best friend and Ms. Robinson confirmed that E.L.R. interacts and plays

with her best friend. (Tr. 194, 212).

### C. Moving about and manipulating objects

Third, E.L.R. alleges in her brief that, "[t]he expanded evidence of record establishes that Plaintiff has a combination of conditions which might reasonably result in marked limitations in moving about . . . ." (Doc. 10 at 8). In the domain of moving about and manipulating objects, the regulations state:

> [A child's] developing gross motor skills should let [the child] move at an efficient pace about [her] school, home, and neighborhood. [The child's] increasing strength and coordination should expand [her] ability to enjoy a variety of physical activities, such as running and jumping, and throwing, kicking, catching and hitting balls in informal play or organized sports. [The child's] developing of fine motor skills should enable [her] to do things like use many kitchen and household tools independently, use scissors, and write.

20 C.F.R. 416.926a(j)(2)(iv). However, as with E.L.R.'s other claimed impairments, the evidence in the record does not support a finding that E.L.R. has an impairment in the domain of moving about and manipulating objects.

Ms. Robinson reported to a Disability Specialist on the phone that E.L.R.'s impairment does not affect her ability to help herself and cooperate with others in taking care of her personal needs. (Tr. 77). Similarly, Ms. Dominguez stated that E.L.R. is "very coordinated!" and that "no problems [have been] observed at all" in this domain. (Tr. 67).

14

Dr. Whitworth also found that E.L.R. does not have a limitation in this area. (Tr. 123). Furthermore, Ms. Sizemore, one of E.L.R.'s teachers, stated that there is no evidence of a limitation in E.L.R.'s ability to move about and manipulate objects. (Tr. 135).

Even Dr. Elrefai stated that, in the domain of moving about and manipulating objects, E.L.R.'s impairment is less than marked. (Tr. 186). Ms. Robinson testified at the hearing before the ALJ that E.L.R. enjoys going outside and playing. (Tr. 211). She further indicated that E.L.R. did not have any physical problems or coordination problems and even noted that E.L.R. jumps rope. (Tr. 212).

### D.    Health and physical well-being

Finally, E.L.R. asserts that the evidence shows a marked impairment in the domain of health and physical well-being. (Doc. 10 at 8). The regulations state that this domain considers "the cumulative physical effects of physical and mental impairments and their associated treatments or therapies on [the child's] functioning that [were] not considered in the evaluation of [the child's] ability to move about and manipulate objects." 20 C.F.R. 416.926a(l). The evidence in the record supports a contrary finding than the one asserted by E.L.R.

Ms. Dominguez, in a teacher questionnaire, stated that E.L.R. "seems very healthy and rarely seems to even have a cold." (Tr. 69). She also noted that E.L.R.

does not frequently miss school because of illness. *Id.* Moreover, Ms. Sizemore stated that she observed no evidence of a limitation in the domain of health and physical well-being. (Tr. 134). And finally, Dr. Whitworth reported that E.L.R. does not have a limitation in this area. (Tr. 123).

Because of the conclusory and inconsistent nature of Dr. Elrefai's report and the overwhelming evidence supporting a contrary finding, the ALJ had good cause to afford his opinion less weight. Further, the ALJ adequately explained his reasons for giving Dr. Elrefai's opinions less weight. Thus, the ALJ did not err in rejecting Dr. Elrefai's opinion and the decision of the Commissioner is due to be affirmed.

## **CONCLUSION**

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is supported by substantial evidence. More specifically, the ALJ did not err in giving less weight to the claimant's treating physician's opinion. Accordingly, the decision of the Commissioner is due to be affirmed. A separate order in accordance with this memorandum opinion will be entered.

**DONE** and **ORDERED** this the 29th day of October, 2010.

                                                              **VIRGINIA EMERSON HOPKINS**
                                                              United States District Judge